JOHN M. MASTERSON, RESPONDENT, v. JAMES BOYCE, APPELLANT.

*Evidence — when parol evidence is admissible to vary a written agreement — such an agreement only concludes parties, privies and those claiming through it — right to enforce the liability of an undisclosed principal.*

APPEAL from a judgment in favor of the plaintiff, entered on the verdict of a jury, and from an order denying a motion for a new trial, made upon the minutes of the justice before whom the action was tried.

The recovery was had for the breach of a warranty made upon the sale of 1,100 shares of the stock of the Maryland Union Coal Company. The sale was in form made by John White, who, it was alleged, acted as the agent of the defendant in making it. The fact of this agency did not appear in the contracts entered into in writing between White and the defendant, nor in the agreement subscribed by the plaintiff, under which he received the stock. Before either of the agreements was made the defendant was the owner of a large tract of land, considered to be valuable on account of its coal deposits, situated in the State of Maryland, and it was finally arranged between himself and White that he should convey this land to the coal company and receive its stock, amounting to the sum of five millions of dollars, in payment of the purchase of the property. Three-fourths of this stock he agreed to sell and transfer to White by an agreement in writing made the 22d of November, 1879. This agreement was not performed by White during the time prescribed for that purpose. And on the 3d of March, 1880, these parties entered into another agreement, under which White paid for and received one-fourth of the stock, and the terms upon

which he was to receive and pay for the residue of the three-fourths were again declared and embodied in the writing. These agreements provided for the sale and delivery of the stock to White, and he alone became bound to the defendant for the payment of the purchase-price. Neither of them contained anything indicating that White was either empowered or expected to act in the disposition of the stock as the agent of the defendant, and for that reason the letters and oral proof offered to establish the agency were objected to at the trial.

The court at General Term said: " In support of the objection it was claimed that the agreements themselves were conclusive, and could not be contradicted for the purpose of establishing the fact of this agency. The objection was not sustained, but the proof was received, and it is now insisted, for the reason assigned, that the evidence was not proper. But in the purchase of the stock the plaintiff in no manner became a party to either of these written instruments; neither did he stand in privity with either of the persons by whom they were subscribed.

" The instruments in no manner entered into the transaction by which the plaintiff acquired his title to the stock, and they were in no form brought to his notice; neither was he informed of their contents. The only manner in which he became a party to any of the transactions between White and the defendant was by receiving from the former a portion of the shares of stock which he had received from the latter. These shares are not set out in the case, but from the facts which have been stated it may be inferred that the shares delivered to the plaintiff were a portion of those received by White from the defendant. And it was only to that extent, therefore, that he became in any form connected with what had transpired between White and the defendant. The agreements executed by those persons neither in form nor effect entered into the transaction.

" The plaintiff derived no right or interest under those agreements, and accordingly was not in privity with them, as that relation has been defined by the authorities. (1 Greenl. on Ev. [7th ed.], § 189; *Stacy* v. *Thrasher*, 6 How. [U. S.], 44, 59; *Campbell* v. *Hall*, 16 N. Y., 575; *Coan* v. *Osgood*, 15 Barb., 583.)

" He was, therefore, not precluded by these instruments from

showing the true state of the relations existing between the defend-
ant and White. He was a stranger to these agreements, and not
prevented by their terms, for that reason, from showing that the
relation of these persons was not that of vendor and vendee, but
was that of principal and agent. (*Lowell Manufacturing Co.* v.
*Safeguard Ins. Co.*, 88 N. Y., 591; 2 Pars. on Con. [6th ed.],
*556; 2 Whart. on Ev., § 920.)

"There was nothing in the transfer of the stock from the
defendant to White, or from the latter to the plaintiff, or in the
agreement subscribed for taking the stock, which was inconsistent
with the production of this proof, for neither of the instruments
so made use of in any manner defined the capacity in which White
acted in the transactions. By the stock it would at most appear
that it had been derived by White from the defendant; but how,
or in what capacity he acted in receiving it, was in no manner
either expressly or by implication declared. The same construc-
tion may also be placed upon the agreement by which the plaintiff
subscribed for the stock. It was simply an agreement to purchase
from White the number of shares set opposite the respective
names of the subscribers, for which they agreed to pay upon
delivery the sum of thirty dollars a share. That White was acting
as the agent of the defendant and that the purchase was made from
him in that capacity, was entirely consistent with all the terms of
the subscription, as well as with the forms adopted for the transfer
of the shares themselves. And the plaintiff was, therefore, at
liberty, if such was the fact, to prove that while he in form pur-
chased the stock from White, White in fact sold it as the agent of
the defendant. The rule is very well settled which permits a person
dealing with another to show by proof that that other was the
agent of an undisclosed principal, and in that manner to charge the
latter, whenever he may be discovered, with the legal consequences
of the transaction itself. And the circumstance that the agreement
may have been reduced to writing, will not exclude the case from
the operation and effect of this rule. This point was considered in
*Ford* v. *Williams* (21 How. [U. S.], 287). The agreement sub-
scribed by the purchasers in that case was the same in its effect as
that which the plaintiff subscribed for the purchase of these shares.
And yet it was held that the person named in it could be shown to

be in truth the agent of the plaintiff in the transaction. In the course of the decision in that case it was said that 'the contract of the agent is the contract of the principal, and he may sue or be sued thereon, though not named therein; and notwithstanding the rule of law that an agreement reduced to writing may not be contradicted or varied by parol, it is well settled that the principal may show that the agent who made the contract in his own name was acting for him. This proof does not contradict the writing; it only explains the transaction.' (Id., 289.) The correctness of this legal proposition was assumed in *Meeker* v. *Claghorn* (44 N. Y., 349), and it is fully sustained in *Huntington* v. *Knox* (7 Cush., 371), *Bank United States* v. *Lyman* (20 Vt., 667), and *Beckham* v. *Drake* (9 Mees. & Wels., 78)." * * *

*Luther R. Marsh,* for the appellant.

*A. J. Vanderpoel, Coles Morris* and *Michael Cardozo,* for the respondent.

Opinion by DANIELS, J.; MACOMBER, J., concurred.

Present — DAVIS, P. J., DANIELS and MACOMBER, JJ.

Judgment reversed, with costs to defendant to abide the event, and the verdict set aside on payment by him of the costs of the trial.